UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00109-GNS-HBB

MARIE YONKO                                                                                              PLAINTIFF

v.

WEST COAST LIFE INSURANCE COMPANY                                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Robert Dreyfuss' Special Appearance Motion to Dismiss and/or Motion to Transfer Case Based on *Forum Non Conveniens* (DN 35) and West Coast Life Insurance Company's Motion to Dismiss (DN 39). The matter is ripe for adjudication. For the reasons discussed below, Robert Dreyfuss' Special Appearance Motion to Dismiss and/or Motion or Transfer Case Based on *Forum Non Conveniens* is **DENIED**, and West Coast Life Insurance Company's Motion to Dismiss is **GRANTED**.

### I.   STATEMENT OF FACTS

Terry Lee Dreyfuss ("Dreyfuss"), a Georgia native, committed suicide on March 27, 2019. (Answer, Countercl. & Third-Party Compl. ¶ 13, DN 5 [hereinafter Interpleader Compl.]). A few months before his death, Dreyfuss changed the beneficiaries on his life insurance policy with West Coast Life Insurance Company ("West Coast Life"). (Interpleader Comp. ¶ 11). Dreyfuss designated fifty percent of the life insurance proceeds to his finance, Marie Yonko ("Marie"), and the rest, in varying shares, to his children Damien Dreyfuss ("Damien") and Terra Ward ("Terra"), and his stepson Jason Lowe ("Jason"). (Interpleader Compl. ¶ 11). After Dreyfuss' death, his beneficiaries submitted respective demands to West Coast Life. (Interpleader Compl. 14-18). In Terra's demand, she included a release purportedly signed by Marie, relinquishing any right to

receive benefits under the policy. (Interpleader Compl. ¶ 18). Terry's other son, Robert Dreyfuss ("Robert"), as the Temporary Administrator of the Estate of Terry Lee Dreyfuss (the "Estate"), submitted a demand for Marie's share under the policy, based on her purported release. (Interpleader Compl. ¶ 20). Marie still claimed she was entitled to her original share of the policy proceeds, however. (Interpleader Compl. ¶ 30). West Coast Life was also informed that Damien, Jason, and Terra were seeking *pro rata* portions of Marie's purportedly disclaimed share. (Interpleader Compl. ¶ 38). West Coast Life then paid out claims to Damien, Jason, and Terra, but withheld the remaining fifty percent. (Interpleader Compl. ¶ 39).

On April 10, 2020, Marie sued West Coast Life in Simpson (Kentucky) Circuit Court for breach of contract. (Notice Removal Ex. A, DN 1-3 [hereinafter Compl.]). On June 24, 2020, West Coast Life removed the action to this Court based on diversity. (Notice Removal, DN 1). West Coast Life then answered and brought a counterclaim in interpleader against Damian, Terra, Jayson, Robert, and the Estate pursuant to 28 U.S.C. § 1335. (Answer, Countercl., & Third-Party Compl., DN 5). Jayson answered the interpleader and brought cross-claims against Damien, Marie, Robert, Terra, and the Estate, and a counterclaim against West Coast Life. (Answer, DN 10). Terra answered and brought cross-claims against the Estate, Robert, and Jayson, and a counterclaim[1] against Marie. (Answer, DN 27). Damian answered and brought cross-claims against the Estate, Robert, and Jayson, and a counterclaim against Marie. (Answer, DN 28).

Robert was served on August 27, 2020, and then on September 3, made a demand on West Coast Life for one hundred percent of the policy proceeds, including the fifty percent already paid out. (Agreed Order, DN 24; Interpleader Pl.'s Resp. Interpleader Def.'s Special Appearance Mot.

---

[1] While designated as a counterclaim, it appears that this claim is more properly characterized as a cross-claim because it relates to the Interpleader Complaint and not the original Complaint.

Dismiss or Transfer Ex. C, DN 38-3). Robert then filed suit against West Coast Life in United States District Court for the Southern District of Georgia for breach of contract and bad faith, seeking the entire proceeds and alleging that Marie, Damien, Terra, and Jayson fraudulently caused Dreyfuss to remove Robert from the policy ("Georgia suit"). *See Dreyfuss v. W. Coast Life Ins. Co.*, No. 2:20-CV-99, 2021 WL 254313 (S.D. Ga. Jan. 25, 2021). Shortly thereafter, Robert filed a special appearance answer in this action, and brought a compulsory counterclaim against West Coast Life, mirroring the claim he brought in the Georgia Suit, and cross-claims against Damian, Terra, and Jayson for disgorgement. (Interpleader Def.'s Special Appearance Answer, Cross-cls., & Countercl., DN 34 [hereinafter Special Appearance Answer]). Robert also made a special appearance and moved to dismiss or transfer this case to the Southern District of Georgia. (Interpleader Def.'s Special Appearance Mot. Dismiss or Transfer, DN 35 [hereinafter Robert's Mot. Transfer]). West Coast Life responded (DN 38) and moved to dismiss the bad faith claim raised in Robert's compulsory counterclaim. (Interpleader Pl.'s Mot. Dismiss, DN 39).

## II.     DISCUSSION

### A.     Motion to Transfer

After filing the Georgia Suit, Robert moved to transfer this case to the Southern District of Georgia under the doctrine of *forum non conveniens*, asserting that Georgia law would apply to the insurance dispute under Kentucky choice of law principles and that the issues presented in the Georgia probate court are similar to his counterclaim and cross-claims. (Robert's Mot. Transfer 1-4). Robert moved pursuant to 28 U.S.C. § 1404(a), arguing that the convenience and interests of the parties favored a Georgia venue. (Robert's Mot. Transfer 4-5). Robert also moved pursuant to 28 U.S.C. § 1406(a), claiming venue for the interpleader action was improper in the Western District of Kentucky under 28 U.S.C. § 1391, despite it being proper under the Federal Interpleader

Act 28 U.S.C. § 2361. (Robert's Mot. Transfer 4-9). West Coast Life responded that Robert was forum-shopping and that the general venue provisions of 28 U.S.C. § 1391 yield to the more specific interpleader provisions under 28 U.S.C. § 1397. (Interpleader Pl.'s Resp. Interpleader Def.'s Special Appearance Mot. Dismiss or Transfer 2, DN 38 [hereinafter West Coast Life's Resp.]). West Coast Life also urged the Court to maintain the suit in the Western District of Kentucky under the first-to-file rule. (West Coast Life's Resp. 2-3). In his reply, Robert argued for the first time that the Western District of Kentucky did not have personal jurisdiction over his compulsory counterclaim for sums beyond the interpleader action involving Marie's fifty-percent share. (Interpleader Def.'s Reply Special Appearance Mot. Dismiss or Transfer 1, DN 44 [hereinafter Robert's Reply]).

On January 25, 2021, West Coast Life filed a Notice of Supplemental Authority providing the Court with an order ("Order") entered by the Southern District of Georgia granting West Coast Life's motion to transfer the Georgia Suit to the Western District of Kentucky. (Interpleader Pl.'s Notice Suppl. Authority Ex. 1, at 1, DN 49-1). In its Order, after holding the first-to-file rule favored the Western District, the Court held:

> [i]t is within the discretion of the court with jurisdiction over the first-filed action to determine whether compelling circumstances require that the second-filed action be dismissed, stayed, transferred, or consolidated . . . the proper course of action for this Court is to transfer this case to the Western District of Kentucky where Plaintiff's arguments regarding compelling circumstances can be considered.

(Interpleader Pl.'s Notice Suppl. Authority Ex. 1, at 6). Robert then filed his own Notice of Supplemental Authority, *absent any supplemental authority*, to explain, *inter alia*, that the Order did not decide the issue of personal jurisdiction. (Interpleader Def.'s Notice Suppl. Authority 1, DN 50). On March 12, the Magistrate Judge granted the parties' joint motion to consolidate the

Georgia Suit with the present case subject to their reservation of arguments regarding transfer. (Order 1, DN 54).

### 1. *Equitable Exceptions to the First-to-File Rule*

Where, as the Georgia court held, the first-to-file rule applies "the court must also determine whether any equitable considerations, such as evidence of 'inequitable conduct, bad faith, anticipatory suits, [or] forum shopping,' merit not applying the first-to-file rule in a particular case." *Brewco, Inc. v. Hardwood Lumber, Inc.*, No. 4:18-CV-00148-JHM, 2019 WL 1410913, at *1 (W.D. Ky. Mar. 28, 2019) (alteration in original) (citations omitted). There is no evidence that Marie or West Coast Life are forum-shopping or have filed anticipatory suits. Accordingly, Robert is left with one potential reason to avoid applying the rule: lack of personal jurisdiction over his compulsory counterclaim in this action.

Rule 12(g)(2) prohibits the filing of a successive Rule 12 motion based on a defense "that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Rule 12(h) provides that "a party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h). To that end, "[c]ourts have found that challenges to personal jurisdiction and venue must be raised separately in a defendant's first motion to dismiss, or else they are waived." *Sazerac Co., Inc. v. Intercontinental Packaging Co.*, No. 3:14-CV-205-H, 2014 WL 12726640, at *2 (W.D. Ky. June 6, 2014) (citation omitted). "[I]f a defendant makes a motion under Rule 12(b)(2) to (5) but does not raise lack of personal jurisdiction, any objection is waived by operation of Rule 12(h)(1)." *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 333 (6th Cir. 2018) (citation omitted).

Although Robert preserved the issue of personal jurisdiction in his pleadings, raising a defense of personal jurisdiction in an answer but failing to do so in a Rule 12 motion does not allow a party to raise it again in a successive Rule 12 motion. "Rule 12(g)(2) applies to any initial motion 'under this rule'—i.e., Rule 12 as whole—and makes no distinction between pre-answer and post-answer motions." *Boulger v. Woods*, 306 F. Supp. 3d 985, 994-95 (S.D. Ohio 2018), *aff'd*, 917 F.3d 471 (6th Cir. 2019) (citations omitted). Likewise, "an objection to personal jurisdiction raised in a reply brief is not the equivalent of a motion under Rule 12(b)(2)."[2] *Johnson v. UMG Recordings, Inc. by MCA Recs., Inc.*, No. 3:17-CV-01548, 2018 WL 4111912, at *5 (M.D. Tenn. Aug. 29, 2018) (citations omitted). Furthermore, even if the Court interpreted Robert's Notice of Supplemental Authority as a motion to dismiss for lack of personal jurisdiction, the result would be the same. Essentially, Robert raised the issue of personal jurisdiction in every context other than his Rule 12 motion, which clearly conflicts with Rule 12's purpose of "avoiding the piecemeal consideration of pretrial motions." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978).

Apart from his failure to file a Rule 12(b)(2) motion, Robert's conduct in this suit also supports a finding of waiver. "[A] defendant [may also] waive[] its personal jurisdiction defense if submissions, appearances and filings . . . give the plaintiff a reasonable expectation that the defendant will defend the suit on the merits . . . or cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Means v. U.S. Conf. of Cath. Bishops*,

---

[2] West Coast Life's response quoted authority supporting Robert's subsequent distinction between personal jurisdiction for interpleader claims versus non-interpleader claims. (West Coast Life's Resp. 7 (citing *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1242 (E.D. Ky. 2011))). But raising this argument in the reply does not rescue Robert from waiving it. *See Summit Training Source, Inc. v. Mastery Techs., Inc.*, No. 1:00-CV-127 WAM, 2000 WL 35442327, at *3 (W.D. Mich. June 1, 2000) (holding that the defendant's objection to personal jurisdiction, raised in reply to his motion to transfer venue, "was clearly an afterthought" and therefore waived).

836 F.3d 643, 648 (6th Cir. 2016) (alterations omitted) (internal quotation marks omitted) (citation omitted). As preserved in his answer, Robert clearly identified personal jurisdiction as an issue before filing his motion to transfer venue, yet he failed to raise the issue before the Court.[3] *See Innovation Ventures, LLC*, 912 F.3d at 333 ("Indeed, the inclusion of Rule 12(b)(2)—dismissal for lack of personal jurisdiction—in the motion's header, if not its substance, acknowledges the possibility that it could be raised."). Similarly, without objecting to the Court's personal jurisdiction, Robert moved to transfer venue under Section 1404(a). "Because transfer under § 1404(a) is only appropriate 'where [a court] has personal jurisdiction over the defendant,' [that defendant] should not have asked the court to consider that basis for dismissal if it planned to object to personal jurisdiction." *Johnson v. UMG Recordings, Inc. by MCA Recs., Inc.*, No. 3:17-CV-01548, 2018 WL 4111912, at *5 (M.D. Tenn. Aug. 29, 2018) (internal citation omitted). Furthermore, Robert chose to assert *permissive* cross-claims against the Interpleader Defendants in the Western District of Kentucky, thus submitting to personal jurisdiction. The Court therefore finds no compelling reason to avoid the first-to-file rule.

    2.    *Motion to Transfer*

Although the first-to-file rule favors this district hearing the action, the Court is still bound to determine whether the consolidated action should be transferred to the Southern District of Georgia. *See Zimmer Enters., Inc. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 989 (S.D. Ohio

---

[3] Robert's pleadings are not entirely clear: his objections to personal jurisdiction are labeled as objections to "jurisdiction" and are only clarified in his objection to West Coast Life's allegation that *subject matter* jurisdiction was proper. (Special Appearance Answer 6). Otherwise, Robert simply maintained that jurisdiction and venue were proper in the Southern District of Georgia. Robert's affirmative defense regarding jurisdiction was in response to West Coast Life's interpleader action, and therefore, could have easily been interpreted as an objection to personal jurisdiction regarding the interpleader action, not his compulsory counterclaim. (Special Appearance Answer 3).

2007) ("[C]ourts have begun to confuse the first-to-file rule with transfer of venue analysis. They are, however, separate questions, the analysis of which are conducted separately." (internal citations omitted)).

It is now settled that both venue and personal jurisdiction over West Coast Life's interpleader action are proper in the Western District of Kentucky. Accordingly, the question is whether "[f]or the convenience of parties and witness, in the interests of justice" the action ought to be transferred to where it might have been brought. 28 U.S.C. § 1404(a). "District courts have wide discretion in deciding motions to transfer." *Zimmer Enters.*, 478 F. Supp. 2d at 991 (citation omitted). "Before deciding whether or not the 'convenience of the parties and witnesses' and 'the interest of justice' justify a transfer, courts first determine whether the proposed alternative venues are 'district[s] or division[s] where [the action might] have been brought.'" *Id.* (alterations in original) (quoting 28 U.S.C. § 1404(a)).

Regarding West Coast Life's interpleader action, "Congress, through the Federal Interpleader Act, 28 U.S.C. § 2361, which authorizes nationwide service of process, confers nationwide personal jurisdiction to district courts." *New England Life Ins. Co. v. Schiller*, No. 12-CV-10090, 2012 WL 3020028, at *3 (E.D. Mich. July 24, 2012) (citations omitted). As to venue, "[a]ny civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. A claimant resides where it would be deemed a citizen for purposes of diversity jurisdiction. *Mudd*, 786 F. Supp. 2d at 1246. As alleged by West Coast Life in the Interpleader Complaint, the only Georgia resident is the Estate. (Interpleader Compl. ¶ 2). But unlike diversity jurisdiction it is the administrator's residence, not the decedent's former residence, that controls for purposes of venue. *Mudd*, 786 F. Supp. at 1247. Robert, a resident of California, was replaced as Temporary

8

Administrator by Timothy H. Wilson, Jr. ("Wilson") prior to the interpleader action. (Interpleader Compl. ¶ 33). Even though West Coast Life did not plead Wilson's residency, based on documents attached to the Complaint it seems Wilson resides in Brunswick, Georgia. (Interpleader Compl. Ex. 14, DN 5-15). The Court thus assumes venue there would be proper. Neither party, however, fully addressed whether Marie could have brought her action in the Southern District of Georgia, nor whether any other party here would be subject to jurisdiction there.[4] But each claim is materially similar, and therefore, as the Court finds the convenience of the parties and interests of justice do not require a transfer of the interpleader action, the same is true for Marie's claims.

When the actions were commenced here, Marie and Jayson were citizens of Kentucky, Damian was a citizen of Florida, Terra and Robert were citizens of California, and West Coast Life was a citizen of Nebraska and Alabama. (Interpleader Compl. ¶ 1-7). Only the Estate was located in Georgia. (Interpleader Compl. ¶ 2). Although Robert maintains that probate proceedings are still pending in Georgia, the capacity issues in Georgia deal with Dreyfuss' will executed in 2018, not his life insurance policy changes in 2019. (Robert's Reply 6). Similarly, both venues would treat findings regarding capacity independently. *See Marshall v. Bramer*, 828 F.2d 355, 358 (6th Cir. 1987) ("[I]t is generally not appropriate to judicially notice findings of fact made in other cases . . . ."); *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1225 (11th Cir. 2017) ("[E]ven though a court may take judicial notice of a 'document filed in another

---

[4] To the extent Robert briefly addresses this question in his Notice of Supplemental Authority, this contention is disregarded. *See Gen. Elec. Co. v. Latin Am. Imps., S.A.*, 187 F. Supp. 2d 749, 752 n.1 (W.D. Ky. 2001) ("A rebuke is in order here. . . . This 'Notice of Filing Supplemental Authority' is properly construed as a motion for leave to file a surreply, which is routinely denied by this court. Moreover, such a motion, when utilized for the purpose of supplementing argument on pending motions, should be used sparingly and for new, controlling case law—not for recently discovered case law, nor for arguments which the parties did not think to make in their pleadings.").

9

court . . . to establish the fact of such litigation and related filings,' a court cannot take judicial notice of factual findings of another court." (citation omitted)). Although under different theories, Robert in the end seeks one hundred percent of the policy proceeds in both suits. His counterclaim against West Coast Life mirrors the Georgia suit, and his cross-claims for disgorgement would surely be raised in Georgia, as Damien, Jayson, and Terra are interested parties. Also, no other party moved to transfer any action to the Southern District of Georgia. A transfer, therefore, would not "prevent wastes of time, energy and money, . . . [or] protect the litigants, witnesses and the public against unnecessary inconvenience and expense." *Zimmer Enters.*, 478 F. Supp. 2d at 991 (citation omitted). Accordingly, the Court denies Robert's motion to transfer.

  B.  **<u>Motion to Dismiss</u>**

In both suits, Robert alleged breach of contract and bad faith claims against West Coast Life pursuant to O.C.G.A. § 33-4-6.[5] In the Western District of Kentucky, West Coast Life moved to dismiss Robert's bad faith claim. (Def.'s Mot. Dismiss, DN 39). Motions pursuant to Fed. R. Civ. P. 12(b)(6) require the Court "to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citation omitted). Although West Coast Life seeks dismissal of Robert's bad faith claim brought under Georgia law, it is not at all clear that Georgia law applies. "[S]ection 33-4-6 . . . is substantive for purposes of *Erie*, and thus not applicable if the laws of some other state should be applied to the issues in this case." *Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am.*, 227 F. Supp. 2d 1348, 1357 (N.D. Ga. 2002) (citations

---

[5] Robert also brought a bad faith claim pursuant to O.C.G.A. § 13-6-11 but later conceded that O.C.G.A. § 33-4-6 provides the exclusive remedy for an insurer's bad faith. (Interpleader Def.'s Resp. Interpleader Pl.'s Mot. Dismiss 13, DN 46). Accordingly, the Court dismisses this claim.

omitted). Robert maintains Georgia law applies, but West Coast Life suggests Georgia might apply California law. A federal court whose jurisdiction is based on Section 1335 interpleader or supplemental jurisdiction applies the choice-of-law provisions of the forum state, here, Kentucky not Georgia. *Bank of N.Y. v. Janowick*, 470 F.3d 264, 271 n.3 (6th Cir. 2006) (Section 1335-interpleader jurisdiction); *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017) (supplemental jurisdiction). Kentucky follows the Second Restatement's "most significant relationship" to conflicts of law where an insurance contract is at issue. *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977). "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 188(1). Section 192 of the Restatement provides:

> [t]he validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined . . . by the local law of the state where the insured was domiciled at the time the policy was applied for, unless . . . some other state has a more significant relationship under the principles stated in § 6 . . . .

*Id*. § 192.

In 1999, Terry received the policy in California. (Interpleader Pl.'s Resp. Interpleader Def.'s Special Appearance Mot. Dismiss or Transfer Ex. D, DN 38-4). Section 192 also recognizes that "[t]here will also be occasions where, following application for the policy, the insured changes his domicil[e] to another state. In such a situation, the state of the insured's new domicil[e] will have the dominant interest in him . . . ." Restatement (Second) of Conflict of Laws § 192(d). To that end, Terry eventually moved to Georgia, became a resident, and in 2019 changed his beneficiaries before his death. The Kentucky Supreme Court has applied the law of the state where a resident purchased the policy and died, although the policy was delivered in a different state.

11

*Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982). Similarly, the court in *Blount v. Bartholomew*, 714 F. Supp. 252 (E.D. Ky. 1988), *aff'd*, 869 F.2d 1488 (6th Cir. 1989), chose the law of the state where the insurer resided three years prior to his death, and where he subsequently executed the change of beneficiary forms and died, even though the policy was purchased and delivered when the insured lived elsewhere. *See id*. at 256. Importantly neither party here argues for Kentucky law. The only contacts Kentucky has with the policy is Marie and Jayson's domicile, which adds little weight. *See id.* ("Even less significant is the fact that . . . the insured named his then fiancée . . . as one of the beneficiaries . . . [as] [she] was not a party to the insurance contract."). Ultimately, there are few significant contacts in Kentucky or elsewhere, and overwhelming contacts in Georgia. *See Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) ("Kentucky law will apply to a contract issue if there are sufficient contacts and no overwhelming interests to the contrary . . . ." (citation omitted)). Accordingly, Kentucky courts would deem Georgia to be the state with the most significant relationship to the policy and apply Georgia state law. *See Rhoutsong v. Fryrear*, No. 3:03CV-388-MO, 2005 WL 2406101, at *2 (W.D. Ky. Sept. 28, 2005).

Under O.C.G.A. § 33-4-6, an insured must prove: "(1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."[6] *Johnston v. Companion Prop. & Cas. Ins. Co.*, 318 F. App'x 861, 867-68 (11th Cir. 2009) (internal quotation marks

---

[6] Robert acknowledges failing to satisfy the sixty-day notice provision. This alone would be grounds for dismissal. *See Bay Rock Mortg. Corp. v. Chicago Title Ins. Co.*, 648 S.E.2d 433, 435 (Ga. Ct. App. 2007). But under Georgia law there is an exception to the notice requirement when the insurer brings a declaratory action to "relieve itself of liability under the policy." *Leader Nat'l Ins. Co. v. Kemp & Son, Inc.*, 375 S.E.2d 231, 234 (Ga. Ct. App. 1988) (citations omitted). The Court has not uncovered an opinion addressing this exception in the interpleader context; therefore it avoids making this *Erie*-guess, and dismisses Robert's claim on the merits.

omitted) (citation omitted). "The insured bears the burden of proving bad faith, which is defined as any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." *Ga. Farm Bureau Mut. Ins. Co. v. Williams*, 597 S.E.2d 430, 432 (Ga. Ct. App. 2004) (citation omitted). "[O]rdinarily, the question of good or bad faith is for the jury, but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties." *Amica Mut. Ins. Co. v. Sanders*, 779 S.E.2d 459, 463 (Ga. Ct. App. 2015) (alteration in original) (internal quotation marks omitted) (citation omitted).

In his counterclaim, Robert alleges that after the initial beneficiary died he was made Dreyfuss' beneficiary, but that Dreyfuss altered the policy "a number of times" between December 11, 2018, and January 7, 2019, while he lacked legal capacity or was subject to undue influence. Robert claims he was the true beneficiary under the Policy and that while probate proceedings were pending, he made a demand under the policy which West Coast Life denied in bad faith. (Special Appearance Answer 19-21). Robert's bare assertions fail to allege a baseless reason for non-payment by West Coast Life—even ignoring the interpleader action—as the policy was changed "numerous times" and he was no longer the beneficiary. In fact, absent allegations that West Coast Life knew Dreyfuss was subject to undue influence or lacked capacity at the time, "Plaintiff's Complaint provides . . . facts suggesting reasonable grounds for Defendant's refusal to pay." *Irving v. Owners Ins. Co.*, No. 1:17-CV-02558-LMM, 2017 WL 8942321, at *2 (N.D. Ga. Sept. 18, 2017) (citation omitted). Even construing Robert's allegations in the light most favorable to him, his counterclaim does not support a reasonable inference that West Coast Life's refusal to pay under the Policy was frivolous and unfounded. Accordingly, the Court grants West Coast Life's motion to dismiss Robert's bad faith claim.

### III. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** as follows:

1. Robert Dreyfuss' Motion to Dismiss and/or Motion to Transfer Case Based on *Forum Non Conveniens* (DN 35) is **DENIED**.

2. West Coast Life Insurance Company's Motion to Dismiss (DN 39) is **GRANTED**, and Robert Dreyfuss' bad faith claim is **DISMISSED WITH PREJUDICE**.

*[signature]*
Greg N. Stivers, Chief Judge
United States District Court

April 15, 2021

cc: counsel of record